FILED
2017 Sep-01 AM 11:34
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHWESTERN DIVISION

| | |
|---|---|
| **JAMES WESLEY MOSS, et al.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| vs. ) | Civil Action Number |
| ) | **2:15-cv-2132-AKK** |
| **JAMES R. BROWN, et al.,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION

James Moss and Florida Pharmacy Solutions, Inc. ("FPS") bring this action against Joseph Schilleci, Jason Tortorici, and the firm Schilleci and Tortorici, P.C. (the "Schilleci Defendants"),[1] for violations of Section 1962 (c) and (d) of the Racketeer Influenced and Corrupt Organizations Act. *See* doc. 1. The court has for consideration the Schilleci Defendants motion for summary judgment, doc. 81, which is ripe for review, *see* docs. 86, 89, and is due to be granted.

## I. SUMMARY JUDGMENT LEGAL STANDARD

Under Rule 56(c)(2) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and

---

[1] The plaintiffs originally sued multiple defendants, the majority of whom have settled. Only the claims against the Schilleci Defendants remain.

that the movant is entitled to judgment as a matter of law." "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id*. at 323. The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish that there is a "genuine issue for trial." *Id*. at 324 (citation and internal quotation marks omitted). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

The court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970); *see also Anderson*, 477 U.S. at 255 (all justifiable inferences must be drawn in the non-moving party's favor). Any factual disputes will be resolved in the nonmoving party's favor when sufficient competent evidence supports the nonmoving party's version of the disputed facts. *See Pace v. Capobianco*, 283 F.3d 1275, 1276, 1278

(11th Cir. 2002) (a court is not required to resolve disputes in the nonmoving party's favor when that party's version of events is supported by insufficient evidence). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (*citing Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)). Moreover, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (*citing Anderson*, 477 U.S. at 252)).

## II. FACTUAL ALLEGATIONS

Moss is one of the owners of FPS, a compounding pharmacy. Doc. 82-1 at 4. In early 2015, FPS began negotiations with James Brown, Janice Brown, Edie Hand, and Robert Hubbard to buy stock in Mill City Gold ("MCG"), as part of a plan to "form a new company and to sell [pharmaceutical] pain creams in Asia." Doc. 82-1 at 12. The conversations evolved into a potential stock exchange, and, in April of 2015, Moss began discussing with Brown (MCG's president) the sale and exchange of FPS shares for MCG shares. Doc. 82-2 at 7--8.

The Schilleci Defendants had no involvement in the share exchange until late July, when Moss tasked the law firm with producing documents to Brown. Docs. 82-2 at 8–9, 19–20; 82-3 at 4. Moss later asked the Schilleci Defendants

3

their opinions on certain provisions in the final agreement due to his concerns about losing control of FPS. Doc. 82-3 at 8.

Eventually, Moss, FPS's board of directors, and MCG executed a Letter of Agreement in which FPS and MCG agreed to effectively swap their stock. Docs. 82-1 at 14; 86-9. Plaintiffs contend that the MCG shares they received were worthless. Doc. 82-3 at 25. Also, although Moss eventually received his FPS shares back, they were allegedly worth less than before the merger. *Id.* at 24.

### III. ANALYSIS[2]

Plaintiffs claim that "Brown, assisted by Schilleci and Tortorici, trick[ed] Moss into signing" the Letter of Agreement. Doc. 1 at 7. Allegedly, Brown and the Schilleci and Tortorici defendants formed an "enterprise within the meaning of 18 U.S.C. § 1961 (4) . . . to formulate and to carry out . . . [a] racketeering . . . scheme . . . requiring Plaintiffs to make certain payments and [allowing the defendants to] take . . . control of FPS, in order to steal from and defraud Plaintiffs." Doc. 1 at 16-17.

---

[2] Although plaintiffs allege in their brief that defendants "committed multiple violations of the ethical rules governing Alabama attorneys . . . and also committed multiple acts of malpractice," doc. 86 at 15, and also reference these contentions in the Verified Complaint, *see* doc. 1 at 7, the plaintiffs specifically plead only counts pursuant to 18 U.S.C §§ 1962(c) and (d). There is no reference to the Alabama Legal Services Liability Act, §6-5-570 *et seq*. *See* doc. 1. To the extent that plaintiffs are requesting leave to amend the complaint, that motion is **DENIED**. *See Gilmour v. Gates, McDonald & Co.*, 383 F.3d 1312, 1314-15 (11th Cir. 2004) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment.") (internal quotation marks omitted).

The Schilleci Defendants raise multiple arguments in support of their motion, which the court addresses below.

## A. The Plaintiffs' Claims are Barred by the PSLRA

Under the Private Securities Litigation Reform Act (PSLRA), absent a criminal conviction, "no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a [RICO] violation." 18 U.S.C. § 1964(c). This RICO bar is applied broadly, "regardless of whether the plaintiff explicitly relied upon securities fraud as a predicate act or even had standing to pursue a securities fraud claim." *Licht v. Watson*, 567 F. App'x 689, 693 (11th Cir. 2014). "[A] district court properly dismiss[es a plaintiff's] RICO claims [when a plaintiff] rel[ies] on predicate acts barred by the PSLRA." *Id.* Furthermore, a plaintiff may not avoid this bar by "pleading mail fraud, wire fraud and bank fraud as predicate offenses in a civil RICO action if the conduct giving rise to those predicate offenses amounts to securities fraud." *Id.* (*citing Bald Eagle Area Sch. Dist. v. Keystone Fin.*, 189 F.3d 321, 330 (3d Cir. 1999)). Therefore, before addressing the merits of a RICO claim, a court must first ascertain whether the asserted "predicate acts" giving rise to the RICO claim occurred "in connection with the purchase or sale of securities." *Id.*

Citing Moss's testimony, the Schilleci Defendants contend that the RICO claims are barred by the PSLRA because the plaintiffs' damages resulted from a

"trade of valuable securities for a trade of worthless securities." Doc. 81 at 27. Indeed, Moss testified that his damages resulted from the alleged inequitable stock trade, *see* doc. 82-3 at 24–25, and admitted as much in the Verified Complaint where plaintiffs alleged that "Defendants knowingly and willfully conspired … to provide shares in FPS Pharma . . . with the specific intent to steal from and otherwise defraud Plaintiffs," doc. 1 at 17. These contentions establish that plaintiffs' allegations are based on acts that purportedly constitute securities fraud. *See Wharf (Holdings) Ltd. v. United Int'l Holdings, Inc.*, 532 U.S. 588, 597 (2001). Therefore, the RICO claims are barred by PSLRA.

### B. The RICO Claims Also Fail on the Merits

Alternatively, to the extent that the PSLRA does not bar the plaintiffs' claims, summary judgment is also due on the merits.

1. *Section 1962(c) claim*

To adequately plead a RICO claim under 1962(c),[3] "a civil plaintiff must establish that a defendant (1) operated or managed (2) an enterprise (3) through a pattern (4) of racketeering activity that included at least two racketeering acts." *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1348 (11th Cir. 2016) (*Ray II*); *see also Sedima S.P.R.L. v. Imrex Corp.,* 473 U.S. 479, 496 (1985). As an initial matter,

---

[3] RICO makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962 (c).

based on this record, plaintiffs have failed to establish the substantive elements of their claim.[4] Moreover, even if plaintiffs can establish the substantive elements, their claim would fail on causation.

Civil RICO claimants "must show (1) the requisite injury to 'business or property,' and (2) that such injury was 'by reason of' the substantive RICO violation." *Williams v. Mohawk Indus.*, 465 F.3d 1277, 1282 (11th Cir. 2006). *See also Ray v. Spirit Airlines, Inc.*, 767 F.3d 1220, 1224 (11th Cir. 2014) (*Ray I*) ("[T]he plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the

---

[4] Specifically, first, there are no facts to suggest that the Schilleci Defendants managed or operated the alleged scheme. Aside from mere conclusory allegations, plaintiffs have failed to establish that the Schilleci Defendants "knew about and much less participated in the alleged enterprise." *Black Diamond Land Mgmt, LLC v. Twin Pines Coal Co.,* 2016 WL 3617974, *12 (N.D. Ala. July 6, 2016) (*citing McNair v. Macon County Greyhound Park, Inc.*, 2011 WL 867220 (M.D. Ala. Mar. 14, 2011)). Second, while the Schilleci Defendants acted as counsel for Moss and FPS, there is no evidence that supports the existence of an association formed for the "purpose of illegal activity," and the court can find nothing but conclusory allegations as to the nature of the defendants' relationships with the other alleged members of the alleged RICO enterprise. *U.S. v. Hewes*, 729 F.2d 1302, 1311 (11th Cir. 1984). In fact, Moss concedes that he is not aware of, nor has he produced evidence of, any conversations between *any* of the defendants outside of the two-month period of July 23, 2015 and September 22, 2015. Doc. 82-3 at 22. In other words, there is no evidence of an enterprise. Third, there is no "pattern of racketeering activity" through predicate acts such as mail or wire fraud. *See* 18 U.S.C. § 1962 (c). While plaintiffs claim that the mailing of documents, including the Letter of Agreement, is sufficient evidence of mail fraud, *see* doc. 86 at 13, they have failed to demonstrate that the relevant documents cited indicate that the Schilleci Defendants made any fraudulent misrepresentations. Also, plaintiffs have not explained why this document is misleading except for Moss's claim that the document caused him to lose control of the business and that he did not intend to effectuate a merger. *See, e.g.,* doc. 86-2 at 8–11. However, both the Letter of Agreement and The Board Resolution explicitly state that MCG will acquire, "100 % of the FPS." Doc. 86-9. Finally, the alleged instances of mail and wire fraud are insufficient to prove a "pattern of racketeering" warranting RICO liability because "[p]redicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement[.]" *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 242 (1989).

violation."). "There is no ambiguity in Supreme Court or Eleventh Circuit precedent about the requirement that a civil RICO claim must sufficiently plead proximate cause." *Ray II,* 836 F.3d at 1351. In fact, when evaluating a claim, the court is required to determine "whether the alleged violation led directly to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.,* 547 U.S. 451, 461 (2006).

Nothing in the record supports the plaintiffs' contention that they were unaware that the Letter of Agreement was a binding document that allowed MCG to assume control over FPS. To the contrary, the Resolution of the Board of Directors demonstrates that Moss and FPS's Board understood the nature of the transaction consisted of a stock swap. Doc. 86-9 at 6 (Resolution stating that "the FPS Board of Directors hereby approves of the purchase of 100% of the . . . shares of FPS by Mill City in return for the issuance of 25,000,000 common shares of Mill City[.]"). Second, the record belies plaintiffs' contentions that their injuries were caused by the alleged RICO violation. In fact, Moss testified that he sustained his losses due to the business deal with MCG, rather than from alleged fraud by defendants, and answered affirmatively when asked if his "losses come out of a concrete one-time business deal that went south," as opposed to "a series of bad business deals." Doc. 82-3 at 25. In the same line of questioning, Moss admitted that he did not expect the stock swap to "do much of anything. It was an instrument to raise money or to be a company to sell . . . creams overseas and [Moss] would

make [] money by the sale of the creams not by the stock." *Id*. Put simply, by Moss' own testimony, the plaintiffs incurred losses based on a bad business deal rather than a RICO violation and, as such, the plaintiffs cannot establish the required causation for their § 1962(c) claim.

2. *Section 1962 (d) claim*

"Any claim under § 1962(d) based on a conspiracy to violate other subsections of § 1962 necessarily must fail if the substantive claims are themselves deficient." *Hope for Families & Cmty. Serv., Inc. v. Warren*, 721 F. Supp. 2d 1079, 1134 (M.D. Ala. 2010). As discussed previously, there is no underlying § 1962(c) violation because the evidence, viewed in a light most favorable to plaintiffs, fails to establish the existence of an enterprise, a pattern of racketeering activity, or proximate causation for plaintiffs' alleged injuries. Therefore, because the underlying RICO claim is not viable, the conspiracy claim also fails as a matter of law. *See Spain v. Brown & Williamson Tobacco Corp.*, 363 F.3d 1183, 1199 (11th Cir. 2004) ("A conspiracy itself furnishes no cause of action . . . If the underlying cause of action is not viable, the conspiracy claim must also fail.") (internal quotation marks and citation omitted); *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1269 (11th Cir. 2004). Moreover, the conspiracy claim fails because plaintiffs' sole allegation that defendants "colluded and conspired to dupe Mr.

Moss out of his company [, and that] [t]here is no other logical conclusion," doc. 86 at 14, is insufficient to meet their burden.

## IV. CONCLUSION

For the foregoing reasons, the motion for summary judgment, doc. 81, is due to be granted. The Court will issue a separate order consistent with this opinion.

**DONE** the 1st day of September, 2017.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE